LOGAN SCOTT GAINES,

     Petitioner,

v.

HEIDI E. WASHINGTON,

     Respondent.

Case No. 16-12461
Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]

When Logan Scott Gaines was a senior in high school, he had sex with a freshman girl. After graduation, Gaines continued to seek out sexual relationships with girls as young as thirteen. Gaines would meet the girls through his work as a high school track coach, or through social media. Gaines' relationships were eventually discovered and they led to criminal charges and convictions.

Gaines served a term in state prison and is currently on parole.[1] Through counsel, he petitions this Court for a writ of habeas corpus. Gaines attacks the constitutionality of his convictions for several counts of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(a), and several counts of accosting, enticing, or soliciting a child for immoral purposes, Mich. Comp. Laws § 750.145a.

---

[1] The language of §§ 2241(c)(3) and 2254(a) require that a habeas corpus petitioner be "in custody" under the conviction or sentence under attack at the time that a petition is filed. *See Maleng v. Cook*, 490 U.S. 488, 490–91 (1989). The "in custody" requirement of § 2254 is satisfied when a petitioner is on parole. *See DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993). And where collateral consequences of a criminal conviction persist even after a petitioner's release, the Court may still grant habeas corpus relief. *Id.*

# I.

Gaines' criminal convictions stem from sexual relationships with three minor females. [2]

He met fifteen-year-old A.W. at a high school party. After the party, Gaines, then eighteen, had sex with her. (R. 7, PID 502.)

Gaines' relationships with minors continued after he graduated. While in college, Gaines volunteered as a track coach for his old high school. (R. 7, PID 499.) That is how Gaines met C.P. (*Id.* at 611–12.) She was fourteen at the time. (*Id.* at 499.) Gaines coached C.P., and despite knowing that C.P. was not old enough to drive, eventually started asking her to send nude photos in exchange for his coaching. (R. 7, PID 613–14.) C.P. sent the photos, and Gaines asked her not to tell anyone about them. (*Id.* at 613–15.)

Around the same time, Gaines sought out M.M. (R. 7, PID 590.) M.M. was thirteen when Gaines met her at a barn party. (R. 7, PID 651.) Gaines started to message her through social media. (*Id.*) About a month into their correspondence, Gaines asked M.M. to send nude photos and M.M. obliged. (R. 7, PID 592.) Eventually the pair arranged to meet at Gaines' house, and on multiple occasions Gaines digitally penetrated her. (R. 7, PID 593–94.) Just as with C.P., Gaines asked M.M. to keep their relationship a secret. (R. 7, PID 598.) But at least once, M.M. brought a friend who witnessed Gaines digitally penetrate M.M. (R. 7, PID 595).

In time, M.M.'s father discovered the nude photos M.M. sent Gaines and called the police. (R. 7, PID 590.) Initially, Gaines denied ever receiving nude photos. (R. 7, PID 606.) But after police showed him screenshots recovered from M.M.'s phone, Gaines admitted to receiving the images and digitally penetrating M.M. (R. 7, PID 606.)

---

[2] This Court's factual narrative draws from the state court record relied upon by the Michigan Court of Appeals. The factual record enjoys a presumption of correctness. 28 U.S.C. § 2254(e)(1); *see also Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

Yet at trial, Gaines told the jury a different story. He said he never had sex with A.W., C.P., or M.M. (R. 7, PID 649, 652–53.) And contrary to the testimony of investigators, Gaines also denied digitally penetrating M.M. (R. 7, PID 652–53.) Gaines said it was the girls who first suggested sending pictures. (R. 7, PID 651, 653.) Gaines only persisted in asking once they offered. (R. 7, PID 653.) He also said that he believed that M.M. and C.P. were sixteen at the time. (R. 7, PID 651, 653.)

The judge consolidated the three cases for trial, and a jury convicted Gaines on four counts of third-degree criminal sexual conduct as well as two counts of accosting a child for an immoral purpose. (R. 1, PID 3–4.) Following his conviction, the judge denied Gaines' motions for a new trial and an evidentiary hearing. *People v. Gaines*, No. 10-035017-19 FH-3 (Saginaw Cty. Cir. Ct. Oct. 29, 2012). The Michigan Court of Appeals affirmed Gaines' convictions and the Michigan Supreme Court denied leave to appeal. *People v. Gaines*, 856 N.W.2d 222 (Mich. Ct. App. 2014); *lv. den.* 861 N.W.2d 29 (Mich. 2015).

Now, Gaines seeks a writ of habeas corpus. (R. 1.) He raises numerous challenges. In summary, Gaines says the charging documents violated due process; challenges the constitutionality of Michigan's accosting statute; contests the joinder of the three cases for trial; calls into question the sufficiency of the evidence; believes the trial court allowed the jury to consider impermissible evidence; points to instances of prosecutorial misconduct; argues he was compelled to testify; complains of Confrontation Clause violations; questions the effectiveness of trial counsel's assistance; says he was denied a fair trial; contends the judge erroneously instructed the jury; and raises cumulative error. All are meritless.

## II.

The Anti-Terrorism and Effective Death Penalty Act instructs federal courts to give state courts "the benefit of the doubt." *Stewart v. Trierweiler*, 867 F.3d 633, 636 (6th Cir. 2017). According to AEDPA, a federal court must defer to a state court's decision "on the merits" unless the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But "[w]hen a state court does not address a claim on the merits, . . . 'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III.

### A.

Gaines' broadest claim for relief challenges the constitutionality of Michigan's accosting statute, Michigan Compiled Laws § 750.145a.[3] Based on Gaines' repeated requests for nude photos of M.M. and C.P., the jury convicted Gaines on two counts of accosting.

---

[3] The statute provides:

> A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to *commit an immoral act*, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

But Gaines says the statute is too vague to allow an ordinary person to understand what conduct is prohibited. (R. 1, PID 97–99.) The statute uses the phrase "immoral act." Gaines contends that "immoral act" is too broadly phrased to give anyone fair warning. (R. 1, PID 98.) And the statute's failure to give fair warning vests complete discretion in a jury to determine whether someone violates the statute. (*Id.*) He also thinks "immoral act" leaves the statute so broadly written that it impinges on First Amendment freedoms. (R. 7, PID 99–100.)

The Michigan Court of Appeals adjudicated this claim on the merits. The state court referenced the dictionary definition of "immoral" to show that an ordinary person would know an "immoral act" is limited to licentious or lascivious acts. *Gaines*, 856 N.W.2d at 243. And, said the appellate court, both licentious and lascivious mean acts "arousing sexual desire." *Id.* So the scope of immoral acts is limited solely to those acts that arouse sexual desire. *Id.* Thus, the Court of Appeals reasoned, the statute puts an ordinary person on clear notice that asking a child to do something arousing sexual desire could bring criminal charges. *Id.* The state court likewise rejected Gaines' First Amendment challenge. Because a statute punishing those who ask a child to perform an act arousing sexual desire only targets conduct, the law poses no danger to protected speech. *Id.* at 244. Because this claim was adjudicated on the merits, § 2254(d) applies.

First, Gaines disagrees with the state court's analysis of the statute's vagueness. Gaines says the Michigan Court of Appeals unreasonably applied *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966), *City of Chicago v. Morales*, 527 U.S. 41 (1999), and *Cox v. Louisiana*, 379 U.S. 536 (1965). (R. 1, PID 97.) All of these cases apply the general, void-for-vagueness doctrine. The doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that

---

Mich. Comp. Laws § 750.145a (emphasis added).

ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The vagueness doctrine also requires "that vagueness challenges to statutes . . . be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975).

Though Gaines has a point that the statute is broadly written, the Michigan Court of Appeals construed the words "immoral act" to mean "arousing sexual desire." This federal court, especially when deciding whether to issue a writ of habeas corpus, has no authority to revisit the meaning assigned by a state court to words in a state statute. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, this Court's task is limited to deciding whether "arousing sexual desire" is too vague to give fair notice.

The statute provided Gaines with fair notice. For one, consistent with *Powell,* the state court analyzed the statute in the context of Gaines' conduct. *Powell*, 423 U.S. at 92. Gaines' text messages show that he knew he was asking children to send nude photos. (*See, e.g.*, R. 7, PID 555, 558–59.) He did not think C.P. was old enough to drive, and repeatedly told M.M. that sexual contact between them would be "illegal." (*Id.*) And the purpose of soliciting a child to send a nude photo is to arouse sexual desire. So even if the statute is broadly phrased, the state court reasonably concluded that the law put Gaines on notice that asking a child to send nude photos fell within the narrowed definition of an immoral act. *See, e.g.*, *United States v. Clark*, 582 F.3d 607 (5th. Cir. 2009) (rejecting vagueness challenge to federal criminal statute that prohibits importation of an alien for prostitution or "other immoral purposes"). Thus, on his vagueness challenge, Gaines cannot clear the high bar set by § 2254(d).

Turning to his First Amendment challenge, Gaines says the Michigan Court of Appeals unreasonably applied *New York v. Ferber*, 458 US 747 (1982). (R. 1, PID 99.) Gaines' strongest

argument is that the statute's use of "immoral act" proscribes constitutionally protected speech such as a mother's recommending an abortion to her child or skipping mass on Sundays. (R. 1, PID 100.)

But *Ferber* upheld a state criminal statute prohibiting the distribution of material depicting sexual performances by children under sixteen. 458 U.S. at 749. The Court found no First Amendment violation where a state statute sought to punish harmful conduct: exploitative and abusive depictions of children. *Id.* And on habeas corpus review, "overbreadth scrutiny diminishes as the behavior regulated by the statute moves from pure speech toward harmful, unprotected conduct." *Staley v. Jones,* 239 F.3d 769, 785 (6th Cir. 2001).

And again, because this argument involves a state court's interpretation of a state statute, the Court's only task is to assess whether precluding conduct arousing sexual desire violates the First Amendment. Here, the Michigan Court of Appeals reasonably concluded that § 750.145a posed no danger to protected speech like abortion counseling or urging a child to skip church. The state court held that the accosting statute only punished criminal activity, such as soliciting a child to produce pornography. *Gaines*, 856 N.W.2d at 244. That is exactly the type of exploitative conduct *Ferber* says a state may constitutionally punish. As the conclusion reached by the Michigan Court of Appeals is in line with *Ferber*, Gaines cannot overcome § 2254(d). He is not entitled to relief.

## B.

Gaines' next batch of claims allege a denial of his right to confront his accusers. Gaines contends the trial court improperly excluded a portion of A.W.'s testimony; constrained defense counsel's ability to cross-examine the victims about other people to whom they sent nude photos;

and limited defense counsel's latitude to cross-examine the victims about their sexual encounters with other men.

**1.**

Gaines says the trial court committed a Confrontation Clause violation by improperly excluding a portion of A.W.'s testimony. On cross, defense counsel asked A.W., "[d]id anyone indicate to you what would happen if you didn't come [to testify]?" (R. 7, PID 505.) A.W. said yes, so defense counsel asked, "[a]nd that would be that you would be taken to jail?" (*Id.*) But before A.W. could answer, the prosecutor objected on hearsay grounds and the judge sustained the objection. (R. 7, PID 505–06.) Gaines says excluding A.W.'s testimony regarding a potential source of bias violated his Confrontation Clause rights. (R. 1, PID 66–67.)

The Michigan Court of Appeals adjudicated this claim on the merits. The state court concluded that though the trial court erred in excluding the evidence, the error was harmless. *Gaines*, 856 N.W.2d at 237. The appellate court reasoned that plenty of evidence already indicated that A.W. did not want to testify so as not to get Gaines in trouble. *Id.* at 236. So any further investigation of her unwillingness to testify would have been cumulative. *Id.*

Gaines contends the trial court contravened Supreme Court precedent holding that the Confrontation Clause permits a defendant to inquire into bases for bias, prejudice, or lack of credibility. *See Davis v. Alaska*, 415 U.S. 308, 347 (1974). (R. 1, PID 65.)

But the record shows Gaines had ample opportunity to examine A.W.'s potential bias or lack of credibility. And the Confrontation Clause permits limits on the extent of a cross-examination, especially when cumulative. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). A.W. told the jury she was upset at having to testify and twice said she felt responsible for Gaines' criminal charges. (R. 7, PID 503.) To keep Gaines out of trouble, A.W. said she initially told the

police nothing occurred between them. (R. 7, PID 504.) But she changed that story at trial, and only because the state subpoenaed her. (R. 7, PID 503–05.) In sum, the jury heard evidence of A.W.'s reluctance to testify and her changing story. Hearing about the consequences of ignoring a subpoena was cumulative. Thus the Michigan Court of Appeals reasonably concluded that the judge's evidentiary error was harmless. Gaines is not entitled to habeas corpus relief on this claim.

**2.**

Gaines next contends that trial court's application of Michigan's rape shield law cut off potential avenues for cross-examining the victims. According to him, doing so violated the Confrontation Clause. (R. 1, PID 93.) Recall that the state charged Gaines with accosting M.M. and C.W. Those charges stemmed from Gaines asking the victims to send him naked photos. Gaines thinks he should have been allowed to ask the victims about the existence and identities of other men to whom they might have sent naked pictures. (R. 1, PID 93.) He also wanted to ask the victims about any sexual contact they had with other men. (*Id.*) Gaines wanted to show the jury that because the victims wished to keep their consensual sexual activity private, the victims each concocted a cover up: that Gaines solicited them for photos and, in M.M.'s case, sex. (R. 1, PID 96.)

The Michigan Court of Appeals rejected these arguments on the merits. Relying on *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), the state court affirmed the trial court's decision when Gaines presented a version of the claims in a pre-trial motion. The trial court ruled that Gaines could not establish how the victims' sexual histories related to credibility. (R. 7, PID 423.) And asking about other men to whom the victims sent photos was at best marginally relevant, confusing to the jury, and highly prejudicial so Gaines could not bring it up. (R. 7, PID 423–30.) The Michigan Court of Appeals agreed that these witnesses were "victims" under MCL 750.520j,

both proposed avenues for cross-examination were irrelevant, and Gaines "had no right of confrontation on irrelevant issues." *Gaines*, 306 856 N.W.2d at 241; *Van Arsdall,* 475 U.S. at 679.

Gaines protests that the state court's decision is "right out of Alice in Wonderland" because it unreasonably applies *Van Arsdall*. (R. 1, PID 94.) *Van Arsdall* holds that the Confrontation Clause encompasses a defendant's right to cross-examine a witness to uncover potential sources of bias and lack of credibility. 475 U.S. at 679.

Yet there is nothing mad about the Michigan Court of Appeals' decision. For one, both state courts correctly concluded that the victims' prior sexual partners had no bearing on credibility. And *Van Arsdall* affirms that the Confrontation Clause leaves trial judges "wide latitude . . . to impose reasonable limits on [] cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues . . . or interrogation that is repetitive or only marginally relevant." 475 U.S. at 679. The trial judge reasonably applied *Van Arsdall* (*see* R. 7, PID 429), to conclude that Gaines could not show enough relevance to the girls' texting behavior. (R. 7, PID 423–30.) Worried that Gaines wanted to conduct a "marginally relevant" and prejudicial mini-trial into the victims' sexual history and behavior—precisely the type of inquiry prohibited by the shield law—the trial judge cut Gaines off. (R. 7, PID 430.) Because *Van Arsdall* does not grant defendants a license to venture down rabbit holes, 475 U.S. at 679, the state court did not unreasonably apply Supreme Court precedent. Gaines is not entitled to relief on this claim.

Resisting this conclusion, Gaines further argues that Michigan's rape shield should not have applied to exclude the victims' testimony in this case. (R. 1, PID 94.) Gaines says that by its terms the law only applies to victims. (*Id.*) Because the victims were not just testifying as victims in their own cases, but were testifying as witnesses in the other cases, their other-acts testimony fell outside the law's protections.

The Michigan Court of Appeals rejected this argument, too. *Gaines*, 856 N.W.2d at 242. But because this claim is a direct challenge to a state court's interpretation of state law, it is not cognizable on habeas corpus review. *See, e.g.*, *Dixon v. White*, 366 F. Supp. 2d 528, 537 (E.D. Mich. 2005).

## C.

Gaines next challenges the charging document in the M.M. case. Based on his relationship with M.M., the state charged Gaines with three counts of criminal sexual conduct and two counts of accosting a child for an immoral purpose. Gaines challenges the elements of the offense and thinks the information was constitutionally defective.

## 1.

Gaines' relationship with M.M. led to three charges. (R. 1, PID 3.) In laying out those charges, the information says the offenses occurred "on or about May 1st, 2010." (R. 1, PID 39.) Gaines argues that because the information contains a timeframe, the prosecutor had to prove beyond a reasonable doubt that the offenses occurred within that timeframe. (*Id.*) Yet trial testimony indicated that the offenses happened between May 1, 2010 and June 11, 2010. (*Id.*) Therefore, Gaines believes the evidence at trial did not establish the timing in the information. Essentially then, Gaines argues that the "on or about May 1st, 2010" language in the information made timing an element of the offense.

The Michigan Court of Appeals disagreed. The state court adjudicated Gaines' claim on the merits and reasoned that "[a]ny . . . claim regarding the sufficiency or great weight of the evidence does not require reversal because time is not an element of the offenses." *Gaines*, 856 N.W.2d at 233, n. 7. So, again, § 2254(d) applies.

Gaines urges the Court to find that the state court unreasonably applied *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). (R. 1, PID 38–39.) In determining sufficiency of the evidence, *Jackson* directs courts to assess "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318.

Gaines' argument misses the mark. The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). In Gaines' case, the Michigan Court of Appeals concluded that timing is not an element of either criminal sexual conduct or accosting. So the prosecutor did not need to prove precisely when the offenses occurred. The end result is that Gaines cannot obtain review on his claim that the state never proved he committed the offenses "on or about May 1st, 2010." Accordingly, Gaines is not entitled to habeas corpus relief on his sufficiency claim.

## 2.

Gaines also thinks the information violated due process because it did not put him on notice of the charged conduct. (R. 1, PID 45.) Gaines points to the same "on or about May 1st, 2010" language and says it was too broad to allow him to mount an adequate defense. (*Id.*)

This is another claim adjudicated on the merits by the state court. *See Gaines*, 856 N.W.2d at 232–33. The state court concluded that the prosecutor charged ongoing criminal sexual conduct based on time-stamped text messages retrieved from Gaines and M.M.'s cell phones. *Id.* Defense counsel had copies of the texts. *Id.* The time-stamped texts reflected when M.M. visited Gaines' parents' home and when she sent nude photos. *Id.* Moreover, the court noted that M.M.'s testimony at the preliminary examination corroborated the time-stamped texts. *Id.* All of the above made

Gaines aware of the charged conduct. *Id.* And even if there was an error, Gaines put on a defense and so must have had notice enough not to have been prejudiced. *Id.*

Gaines counters that the state court unreasonably applied *Cole v. Arkansas*, 333 U.S. 196 (1948), and *Stirone v. United States*, 361 U.S. 212 (1960). (R. 1, PID 45.) *Cole* stands for the proposition that due process requires that a criminal defendant receive notice and opportunity to defend against criminal charges. *Cole,* 333 U.S. at 201. And Gaines says *Stirone* reasons that a criminal defendant cannot be "tried on charges not made in the indictment against him." 361 U.S. at 217. (R. 1, PID 45.)

Neither *Stirone* nor *Cole* is on point. Gaines takes the quote from *Stirone* out of context. *Stirone* holds that a federal criminal defendant has a right to only face charges made by a grand jury. 361 U.S. at 217. So *Stirone* is of no help to a state criminal defendant's due process notice challenge to an information. Likewise, *Cole* is inapposite because it says nothing about the due process notice requirements in criminal sexual assault cases involving minors.

And the Sixth Circuit repeatedly holds that there exists no clearly established Supreme Court precedent delineating due process notice requirements for charging documents in criminal sexual assault cases involving minors. *See Coles v. Smith*, 577 F. App'x 502, 510 (6th Cir. 2014); *Bruce v. Welch*, 572 F. App'x 325, 330–31 (6th Cir. 2014); *Stevenson v. Scutt*, 531 F. App'x 576, 580 (6th Cir. 2013). So the Michigan Court of Appeals reasonably concluded that the evidence satisfied *Jackson*. Gaines is not entitled to relief on his claim that the charging documents violated due process.

### D.

Gaines also challenges other-acts evidence admitted at trial. Because Gaines faced charges involving minors, a Michigan statute allowed the state to admit other-acts evidence. *See* Mich.

Comp. Laws § 768.27a(1). Some of the other-acts evidence was conduct that resulted in the charges against Gaines, i.e., the texts Gaines sent to the girls and the pictures they sent back. (R. 7, PID 552–62.) And some of the evidence was uncharged conduct, i.e., A.W.'s initial interview with authorities in which she said Gaines asked her to send nude photos. (R. 7, PID 503.) Gaines raises a host of challenges to the other-acts evidence.

Gaines first says he never received proper notice of the other-acts evidence, a violation of Michigan law. (R. 1, PID 49.) Then Gaines says the evidence of his relationship with A.W. and M.M. involved sexual penetration, while the evidence of his relationship with C.P. did not. (R. 1, PID 56–57.) Thus, the other-acts were so dissimilar as to be more prejudicial than probative. (R. 1, PID 57.) And because the state relied on a propensity theory, the other-acts evidence admitted pursuant to Michigan Compiled Laws § 768.27a violated due process. (R. 1, PID 57–58.)

The Michigan Court of Appeals adjudicated these claims on the merits and rejected all of them. *Gaines*, 856 N.W.2d at 234. The state court concluded that in each case Gaines "formed a relationship with a much-younger girl at his high school." *Id.* The appellate court explained that all the relationships occurred close in time, all involved Gaines' high school, and all involved cellphone communications. *Id.* Given the similarities in the way Gaines pursued the relationships, the state court found that the probative value of the other-acts evidence "substantially outweighed" any unfair prejudice. *Id.* So the Michigan Court of Appeals concluded that there were no violations of federal or Michigan law. *Id.*

As a threshold issue, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). So to the extent Gaines says the state's actions violated state law, or that the state court violated sections of the Michigan Rules of Evidence or Michigan Compiled Laws § 768.27a, his claims are

not cognizable on collateral review. *See Estelle*, 502 U.S. at 72; *Bey v. Bagley*, 500 F 3d 514, 519 (6th Cir. 2007); *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).

Additionally, there is no clearly established Supreme Court precedent holding that a state violates due process by admitting "prior acts" evidence to show conduct in conformity with character. *See Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003); *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). The closest he can get is *Estelle v. McGuire*, 502 U.S. 62 (1991), but that case expressed "no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." 502 U.S. at 75 n.5. As a result, the state court's rejection of Gaines' claims was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Finally, Gaines cannot succeed in claiming that the other-acts evidence was so prejudicial its admission violated due process. True, certain evidence can be so unfairly prejudicial as to deprive a defendant of a fundamentally fair trial. *See, e.g.*, *Ege v. Yukins*, 485 F.3d 364, 377–78 (6th Cir. 2007). Yet federal courts give state courts wide latitude to weigh probative value against prejudice. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002). And habeas corpus relief is only appropriate where the state court's decision to admit the evidence rises to an error of constitutional significance. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). That is not the case here. The Court agrees with the Michigan Court of Appeals that Gaines engaged in a pattern. He started relationships via text with young girls. Eventually he asked them for nude photos, suggesting that the girls keep the photos a secret, and not tell anyone about their relationship with him. Moreover, Gaines' testimony made the other-acts evidence all the more

relevant. Gaines testified that the girls offered to send him photos and he thought M.M. and C.P. were sixteen. But the

other-acts evidence corroborated the victims' testimony, and contradicted Gaines' account. (*See* R. 7, PID 552–62.) As a result, Gaines cannot show any error at all, let alone an error of constitutional significance. He is not entitled to habeas corpus relief on his other-acts claims.

**E.**

Gaines next challenges the state trial court's decision to join all three of his cases into one for trial. Gaines thinks that consolidating the three cases into a single trial left him with a Hobson's choice: either testify in all three cases or not at all. (R. 1, PID 60.) Gaines says he would have testified to rebut M.M.'s testimony, but would not have testified in the other two cases. (*Id.*) Consolidating the cases meant he had to forego his Fifth Amendment right to remain silent. (*Id.*)

The Michigan Court of Appeals adjudicated this claim on the merits. The state court concluded that joinder did not violate Gaines' right to remain silent. *Gaines*, 856 N.W.2d at 236. Because M.M. would have testified in all three cases, the state court reasoned that the logic behind Gaines' rationale for testifying against M.M. applied across the board. *Id.*

Gaines believes the Michigan Court of Appeals unreasonably applied *Harris v. City of New York*, 401 U.S. 222 (1971). (R. 1, PID 62.) Gaines says *Harris,* 401 U.S. at 225, stands for the proposition that every criminal defendant has the right to choose whether to testify or remain silent. (*Id.*)

But *Harris* holds that a criminal defendant may not contort the *Miranda* rights into "a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 U.S. at 226. It has nothing to do with whether joinder violates a criminal defendant's constitutional right to remain silent. The Sixth Circuit has long held that

joinder and a defendant's right to remain silent may constitutionally coexist. *See Conte v. Cardwell*, 475 F.2d 698, 700 (6th Cir. 1972); *Kirk v. United States*, 457 F.2d 400, 402 (6th Cir. 1972); *United States v. Lee*, 428 F.2d 917, 921 (6th Cir. 1970). Most important, Gaines cannot point to—and the Court cannot find—any clearly established Supreme Court precedent holding that joinder violates a criminal defendant's right to voluntarily relinquish the right to testify. So Gaines cannot show that the Michigan Court of Appeals unreasonably applied Supreme Court precedent. He is not entitled to relief on this claim.

### F.

Gaines also asserts prosecutorial misconduct. Gaines says the prosecutor asked Gaines to comment on the credibility of other witnesses; improperly referred to the victims' ages to invoke the jurors' sympathies; waited too long to dismiss an accosting charge; and argues the cumulated instances of misconduct violated due process. (R. 1, PID 78.)

The Michigan Court of Appeals dealt with all of these claims on the merits. *Gaines*, N.W.2d at 237–38. The state court concluded that the prosecutor should not have asked Gaines to comment on another witness' credibility, but found the error harmless. *Id.* at 238. The appellate court also reasoned that the victims' ages were at issue in the trial, so it was not misconduct to remind the jurors that even consensual sexual contact with minors violated the law. *Id.* And lastly, the state court held that the stipulated dismissal of an accosting charge did not prejudice Gaines. *Id.* at 237.

Gaines argues that the state court unreasonably applied *Darden* and *DeChristoforo*. (R. 1, PID 78.) When assessing prosecutorial misconduct, those cases reason that the inquiry is whether the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). When, as here, a state court has adjudicated the prosecutorial misconduct claims on the merits, Gaines must shoulder the heavier burden of showing a state court decision "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103). Further, *Darden* and *DeChristoforo* are generally-phrased precedents providing state courts a broad spectrum of reasonable outcomes based on case-specific determinations. *See Davis v. Carpenter*, 798 F.3d 468, 473–74 (6th Cir. 2015).

Gaines cannot shoulder this burden. The state court reasonably concluded that the prosecutor did not err in mentioning the victims' ages. Placed in context, the prosecutor never used the victims' ages to appeal to the jurors' sympathies. Rather, the prosecutor brought up age to highlight that consensual sex with a minor was still a criminal act. Further, the state court reasonably concluded that even though the prosecutor should not have asked Gaines to opine about the credibility of other witnesses, the error did not prejudice Gaines. The trial judge instructed the jurors that only they could assess credibility. That instruction adequately reduced the chances that the jury might substitute Gaines' credibility determination for their own. Finally, if it was error to dismiss the accosting charge after the jury knew of it, M.M. eventually testified to the precise conduct that led to the charge in the first place. Because the jury heard of the conduct anyway, any error in reading the charge to the jury did not render Gaines' trial fundamentally unfair. So Gaines cannot show a state court decision "lacking in justification." Thus, Gaines is not entitled to relief on his prosecutorial misconduct claims.

Lastly, to the extent Gaines believes the cumulated misconduct rendered his trial fundamentally unfair, that claim is not cognizable. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

## G.

Gaines next objects to a number of jury instructions. Gaines thinks these were structural errors warranting automatic reversal. Gaines says the trial judge offered a prejudicial explanation of joinder; believes the jury instructions omitted the intent element for the accosting charges; thinks there should have been a limiting instruction with respect to other-acts evidence; and, finally, says the judge "foreclosed" the jury from asking questions. (R. 1, PID 84.)

### 1.

Gaines' strongest argument involves the trial court omitting accosting's intent element from the jury instructions. (R. 1, PID 85–88.) And while the Michigan Court of Appeals agreed with Gaines, the state court concluded that Gaines' trial counsel waived any challenge to the instructions when he told the trial court he had no objection to the instructions. *Gaines*, 856 N.W.2d at 239. Nonetheless, given the evidence against Gaines, the state court concluded that the erroneous instruction did not deprive Gaines of a fair trial. *Id.* As it appears the state court reviewed this claim for harmless error, § 2254(d) applies. *See Vasquez v. Jones*, 486 F.3d 135, 149 (6th Cir. 2007).

Gaines thinks the state court unreasonably applied *Francis v. Franklin*, 471 U.S. 307 (1985), and *Sandstrom v. Montana*, 442 U.S. 510 (1979). (R. 1, PID 84.) Both cases hold that due process "prohibits the State from making use of jury instructions that have the effect of relieving the State of the burden of proof . . . on the critical question of intent in a criminal prosecution." *Franklin*, 471 U.S. at 326 (citing *Sandstrom*, 442 U.S. at 521). Gaines argues the accosting

instruction provided to his jury failed to mention that Gaines must have specifically intended to induce or force M.M. or C.P. to commit a proscribed act. (R. 1, PID 85–86.) Gaines further urges this Court to find the error "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of [Gaines'] innocence." (R. 1, PID 87.)

To the extent that Gaines believes that the Michigan Court of Appeals unreasonably applied Supreme Court precedent in deciding that the omission was harmless, the Court disagrees. "In noncapital cases," the Supreme Court "ha[s] often held that the trial court's failure to instruct a jury on all of the statutory elements of an offense is subject to harmless-error analysis." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). So the Michigan Court of Appeals did not misstep.

Likewise, the state court reasonably concluded that the improper instruction was harmless. For one, Michigan courts recognize that because the accosting statute is framed in the alternative, a defendant may violate the statute in one of two ways. *See People v. Kowalski*, 803 N.W.2d 200, 209–10 (Mich. 2011). And Gaines concedes that the trial court properly instructed the jury on one of those alternatives. (R. 1, PID 86.) The state court added that substantial evidence showed Gaines had the specific intent of inducing a child to send naked photos. *See Gaines*, 856 N.W.2d at 239 (Gaines "persistently" asked the girls for photos; threatened to end their relationships if the girls did not comply; and urged one of the girls to send photos in exchange for Gaines' athletic coaching). The state court reasonably concluded that because Gaines' specific intent was not a close call, Gaines could not show harm flowing from the missing instruction. Therefore, Gaines cannot overcome § 2254(d), and cannot obtain habeas corpus relief.

## 2.

Next, Gaines challenges the trial judge's preliminary explanation of joinder. During *voir dire*, the trial judge told the jury that the three cases were combined because "they're kind of

related." (R. 1, PID 89.) Gaines thinks that cases are only related if the allegations have merit. (R. 1, PID 89.) So, from Gaines' perspective, when the judge said the cases were related, she was really suggesting the prosecution had a good case. (*Id.*) Suggesting the prosecution had a good case was a sign of the trial judge's impartiality. (*Id.*) And having an impartial trial judge is a structural error requiring automatic reversal. (*Id.*)

The Michigan Court of Appeals reviewed this claim on the merits, and reasoned that "the instruction to the prospective jurors that the cases were 'kind of related' was merely an attempt by the trial court to explain why three separate cases were being tried together." *Gaines*, 856 N.W.2d at 240. The Court of Appeals placed the preliminary instruction in context and showed that the trial judge was explaining a potential point of confusion: why the trial involved three separate charging documents. *Id.* The state court's decision deserves AEDPA deference. *See Stewart*, 867 F.3d at 638.

Gaines believes the state court unreasonably applied *Tumey v Ohio*, 273 U.S. 510 (1927). Gaines says *Tumey* stands for the proposition that due process requires an impartial judge. (R. 1, PID 90.)

But the holding in *Tumey* is more specific. *Tumey* holds that due process is violated when a trial judge has a monetary interest in seeing a defendant convicted. 273 U.S. at 523. *Tumey* struck down a state statute allowing town mayors to hear cases and only receive compensation if they convicted those brought before them. *Id.* at 520.

Gaines does not challenge a trial judge's potential monetary interest in obtaining a conviction. Rather, Gaines challenges the trial judge's explanation of joinder. And the state court reasonably explained how the judge's explanation had nothing to do with impartiality. Gaines

cannot show an unreasonable application of Supreme Court precedent, and is not entitled to habeas corpus relief on this claim.

**3.**

Gaines also thinks the trial judge foreclosed the jury from requesting further clarification about the instruction provided on third-degree criminal sexual conduct. (R. 1, PID 91.) After the jury sent a note asking for more clarity on the instruction, the trial court advised the jury: "You have the instructions on [third-degree criminal sexual conduct], so I would suggest you refer to those. And with that, I will excuse you at this time to go back and continue your deliberations." (R. 7, PID 685.) Gaines says the trial judge's comment effectively told the jury they were "stupid" if they could not understand the original instruction. (R. 1, PID 92.) And once called "stupid" the jury would be unlikely to ask another question. (*Id.*)

The Michigan Court of Appeals adjudicated this claim on the merits and rejected it. *Gaines*, 856 N.W.2d at 240–41. The state court held that the trial judge permitted the jury to ask questions and provided responsive answers to the questions asked. *Id.* And when confronted with the jury's request for clarity, it was not error for the trial judge to refer the jury to the correct instruction already provided. *Id.*

Gaines says the Michigan Court of Appeals unreasonably applied *Bollenbach v. United States*, 326 U.S. 607 (1946). *Bollenbach* holds that where a jury, desiring additional instructions, makes explicit its difficulties, a trial judge should clear the difficulties away with concrete accuracy. *Bollenbach*, 326 U.S. at 612–13.

Gaines is incorrect to suggest the trial judge foreclosed any further questions from the jury. For one, the record shows the trial judge encouraged the jury to ask questions. (R. 7, PID 683.) And when the jury asks a question, the trial judge is entitled to exercise its sound discretion in

deciding how best to respond to the inquiry. *See United States v. Brown*, 276 F. 3d 211, 216 (6th Cir. 2002). In response to a request for further clarity, the trial judge certainly has the option of referring the jurors back to the original instruction, if that instruction was proper. *See United States v. Nunez*, 889 F.2d 1564, 1569 (6th Cir. 1989). As Gaines does not dispute that the criminal-sexual-conduct instruction was proper, the trial judge made no error in referring the jurors back to it. So Gaines cannot show an unreasonable application of Supreme Court precedent. Accordingly, Gaines is not entitled to habeas corpus relief on this claim.

**4.**

Finally, Gaines argues that the trial court failed to provide a limiting instruction with respect to the other-acts evidence. Gaines says the trial court should have given the limiting instruction *sua sponte*.

But Gaines' trial counsel did not seek a limiting instruction, and went on record to say he had nothing to say about the jury instructions provided. (R. 7, PID 684.) Accordingly, the Michigan Court of Appeals found Gaines' claim waived because of trial counsel's actions. *Gaines,* 856 N.W.2d at 234, n. 9.

Because the state court found the claim waived, Gaines has procedurally defaulted it. *See e.g.*, *Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) (holding that "waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors"). Gaines has not provided any basis to look past the default, so he cannot obtain habeas corpus relief on this claim.

**H.**

Gaines concludes with multiple allegations of ineffective assistance of trial counsel. He says his counsel should have objected to the "on or about May 1st, 2010" language in the charging

documents; the admission of the other-acts evidence; the jury instructions; and the alleged prosecutorial misconduct. (R. 1, PID 104.)

The Michigan Court of Appeals adjudicated all of these claims on the merits. The state court concluded that Gaines could not show any error or prejudice flowing from a lack of objection to the charging documents. *Gaines*, 856 N.W.2d at 233. Second, given the probative value of the other-acts evidence, objecting to its admissibility would have been "futile." *Id.* at 234, n. 8. Next, counsel's decision not to object to the jury instructions fell within the broad range of reasonable, strategic decisionmaking. *Id.* at 234, n. 9. And with respect to the instances of prosecutorial misconduct, due to the "overwhelming evidence" offered at trial, Gaines could not show prejudice. *Id.* at 238. So § 2254(d) applies.

Success on an ineffective-assistance-of-counsel claim requires Gaines to point to evidence of his trial counsel's deficient performance and then explain how that deficient performance prejudiced his legal defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And where § 2254(d) applies, as it does here, Gaines must show that the state court unreasonably applied *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). As a result, the already deferential deficient-performance prong becomes "doubly so." *Id.*

Gaines cannot clear the high hurdle. The state court reasonably concluded that some of Gaines' claims fail because counsel did not perform deficiently. As discussed above, the prosecutor was not required to prove the timing of the offenses, so counsel had no basis to object to the charging documents. Because the trial court ruled that the other-acts evidence was admissible after hearing counsel's argument on the matter, further argument in the form of an objection would have been futile.

The state court also reasonably concluded that some of Gaines' claims fail because Gaines cannot show prejudice. To show prejudice for failing to object to prosecutorial misconduct, Gaines needs a reasonable probability of a different result with effective assistance. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). But given the great weight of the evidence against him, Gaines cannot show a reasonable probability of a different outcome. And the same issue applies to the jury-instructions claim: Gaines cannot show prejudice given the evidence of his specific intent and the proper instruction on one alternative version of the offense.

So Gaines is not entitled to habeas corpus relief as a result of ineffective assistance of counsel.

## I.

Finally, Gaines raises a claim of cumulative error. But the Sixth Circuit holds that there is no clearly established federal law permitting the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Therefore, petitioner is not entitled to habeas corpus relief as a result of cumulative error. *Id.*

## IV.

For the foregoing reasons, the Court DENIES Gaines' petition for a writ of habeas corpus and because the Court believes that no reasonable jurist would argue that petitioner should be granted habeas corpus relief on his claims, the Court DENIES Gaines a certificate of appealability. *See Davis v. Rapelje*, 33 F. Supp. 3d 849, 865 (E.D. Mich. 2014).

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

Dated: January 25, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2018.

s/Keisha Jackson
Case Manager